UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOSEPH ESSENTER AND SYLVIA
ESSENTER,
                 Plaintiffs,

     -against-                             1:09-CV-0539 (LEK/DRH)


CUMBERLAND FARMS, INC. and V.S.H.
REALTY, INC.,

                 Defendants.
_____

## MEMORANDUM-DECISION AND ORDER


## I. INTRODUCTION

      Presently before the Court is Plaintiffs' Motion for summary judgment on the issue of

liability or, in the alternative, an adverse finding and inference in favor of Plaintiffs as to the cause

of Mr. Essenter's accident.  Dkt. No. 17.  Plaintiffs Joseph Essenter and Sylvia Essenter

("Plaintiffs") filed this suit in state court on April 15, 2009 for negligence and loss of consortium

against Defendant Cumberland Farms, Inc. ("Cumberland Farms") and Defendant V.S.H. Realty,

Inc. ("V.S.H. Realty").[1]  Dkt. No. 1, Ex. A.  On May 7, 2009, Defendant removed this action to the

Northern District of New York based upon diversity jurisdiction.  Dkt. No. 1.  For the reasons that

---

[1]Defendant admitted to their ownership of the property on which the accident occurred in a letter dated May 6, 2009 from Thomas G. Daley, Esq. to Timothy R. Shevy, Esq.  In the same letter, Defendant's counsel stated: "In addition to the foregoing, please be advised that V.S.H. Realty, Inc. (the party known by Plaintiffs to be the previous title owner of the property) is no longer in existence. The corporation was dissolved and all of its assets were transferred to Cumberland Farms, Inc."  See Dkt. No. 20, Ex. E.  For the purposes of the present Motion, Cumberland Farms will be treated as the sole Defendant.

follow, Plaintiffs' Motion for summary judgment is denied, but Plaintiffs' request for an adverse inference is granted.

## II. BACKGROUND

On the night of January 19, 2009, Joseph Essenter fell and was injured in the parking lot of Cumberland Farms, located at 505 Campbell Avenue, in Troy, New York.  Plaintiffs' Proposed Finding of Facts ("Pls.' PFF ") (Dkt. No. 19) ¶¶ 1, 2.  This fall caused a tear in the distal quadriceps tendon of Mr. Essenter's right knee, and surgery was required to repair the damage.  Id. ¶¶ 4, 5, 6, 7.  Mr. Essenter stated that the temperature that night was freezing and that he slipped on ice, slush, or a combination of those wintery weather conditions which had existed in the Defendant's parking lot area.  Id.  ¶¶ 9, 10.  That same evening, another store patron, Todd Carl, was present.  Id. ¶ 11.  He testified that at the time of the accident he observed the presence of ice and slush in the poorly maintained parking lot and areas around the gas pumps where Mr. Essenter fell.  Carl Deposition (Dkt. No. 19, Ex. T) at 9-11.

The National Oceanic and Atmospheric Administration confirmed that there was no precipitation at the time of the accident; however, there was light snowfall in the hours preceding the accident, and further, there was approximately three inches of snowfall the day before.  Pls.' PFF ¶¶ 18, 19, 20.  Additionally, there was as much as six inches of snow or ice on the ground on the evening the accident occurred that remained from previous snowfalls.  Id. ¶ 22.  The highest temperature reached the day of the accident was 28 degrees, with a low of 20 degrees.  Id. ¶¶ 23, 24.  The temperature and weather conditions throughout the day of the accident indicate that the

previous day's snow would have begun to melt during the daytime hours and then re-freeze in the

colder evening air.  Id. ¶¶ 23, 24, 25.

On January 26, 2009, Sylvia Essenter, the wife of Joseph Essenter, contacted Colleen Durr,

the manager at Cumberland Farms, to notify her of the incident.  Id. ¶¶ 35, 36.  An accident report

was filled out with the information provided by Mrs. Essenter.  Id.  Subsequent to receiving this

information, Ms. Durr viewed the Rapid Eye Camera video for the evening of January 19, 2009.  Id.

¶ 39.  While viewing the video, Ms. Durr printed still photographs from the computer screen, and

made notes of what they depicted.  Id. ¶ 40.

After viewing the video and printing the still shots, Ms. Durr copied the pertinent portion of

the video onto a DVD.  Id. ¶¶ 45, 46.  The Rapid Eye system was a new system at this store

location, and was a relatively new feature for Cumberland Farms in general.  Id. ¶ 49.  Ms. Durr

testified that because most locations did not yet utilize the Rapid Eye system, no official training

manuals or procedures for use had yet been produced by Cumberland Farms.  Id. ¶ 50.  Despite Ms.

Durr's unfamiliarity with the system, she proceeded to make a copy of the surveillance footage,

following company protocol.  Id. ¶ 46.  Ms. Durr states that she viewed the first several seconds of

the DVD to ensure that it recorded properly.  Id. ¶¶ 52, 53.  Ms. Durr went on to send the DVD,

along with the still photographs and accident report, to Cumberland Farm's Risk Management in

Massachusetts.  Id.  Upon receipt of these items, Cumberland Farm's Risk Management filed the

report and DVD and took no further action; Cumberland Farms now contends that the DVD is blank

and that there are no images available to disclose.  Id. ¶ 68.

Counsel for Plaintiffs first contacted the insurer of Cumberland Farms by letter dated March 23, 2009, little more than two months after the date of the accident. Id. ¶ 55. Shortly thereafter, Plaintiffs commenced this action by filing a summons and complaint with the clerk in Rensselaer County dated April 15, 2009, and then amended the complaint two days later. Id. ¶ 56. Plaintiffs made discovery demands on July 8, 2009. Id. ¶¶ 59, 61. The Notice to Produce sought any photographs or video depicting the accident scene at the time the accident occurred, as well as footage from before and after the accident. Id. ¶ 59. In response to Plaintiffs' request, Cumberland Farms produced still photographs of the premises at 505 Campbell Avenue from a date and time other than that of the accident. Id. ¶ 60.

Plaintiffs' Demand for surveillance material sought "any and all films, photographs, video tapes or audio tapes, including transcripts or memoranda thereof, and all portions of such material including out-takes, rather than only those portions the Defendants intend to use involving Plaintiff Joseph Essenter and his activities." Id. ¶ 61. In response to Plaintiffs' Demand for surveillance material, Cumberland Farms produced four low-quality computer printouts, which depicted screen-shots from Defendant's surveillance video. Id. ¶ 61. Plaintiffs, beginning on November 2, 2009, and continuing through June 29, 2010, made continuous demands for the actual surveillance footage but Cumberland Farms informed Plaintiffs that no video existed. Id. ¶¶ 64, 66, 67, 72, 73, 65. Later, Defendant advised Plaintiffs that although a video had once existed, the initial transfer to DVD performed by Colleen Durr did not work, the DVD was blank; and the footage was no longer on the computer system at the Cumberland Farms store because recordings are only saved for thirty days. Id. ¶ 68, 69.

4

### III. DISCUSSION

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  Byrnie v. Town of Cromwell, Bd. Of Ed., 243 F.3d 93, 107 (2d Cir. 2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)).  In order for a moving party to be successful on a motion seeking sanctions for spoliation of evidence, they must demonstrate: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed, (2) the party having control over the evidence acted with a culpable state of mind, and (3) the missing evidence is relevant to the moving party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.  Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 107 (2d Cir. 2002).

A court has authority to impose sanctions in response to spoliation of evidence.  Where a party violates a court order --- either by destroying evidence when directed to preserve it or by failing to produce information because relevant data has been destroyed --- Rule 37(b) of the Federal Rules of Civil Procedure provides that the court may impose a range of sanctions, including dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorneys' fees and costs.  Fed. R. Civ. P. 37(b); see Residential Funding Corp., 306 F.3d at 106-07; Metropolitan Opera Assn., Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union, 212 F.R.D. 178, 219-20 (S.D.N.Y. 2003).

**1. Spoliation of Evidence**

a. Duty to Preserve

The duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001)).

In this case, Sylvia Essenter called Cumberland Farms to inform them of her husband's fall, as well as his injury and need for surgery. Pls.' PFF ¶ 35. She provided the manager any information needed to file an accident report. Id. While Mrs. Essenter may not have said what caused her husband to fall, it was then that Cumberland Farms had actual knowledge of the incident, as well as Mr. Essenter's injury. Subsequent to Mrs. Essenter's phone call, Colleen Durr viewed the surveillance video of the time the incident occurred. Id. ¶ 39, 40. The video showed what occurred before, during, and after Mr. Essenter's fall. It was reasonable to assume that the video would be relevant to future litigation, as it depicted the conditions of the area in question, as well as the fall itself. Ms. Durr also filled out an accident report, printed still photographs from the video, copied the video onto a DVD, and subsequently sent these items to Risk Management. Id. ¶ 39, 40, 45, 46. These are steps that a reasonable person would take to preserve information that would be important to litigation. Thus, there was a duty by Defendants to preserve that video in the event of future litigation arising from Mr. Essenter's fall.

b. Culpable State of Mind

In order for a moving party to succeed on a motion for spoliation, they must show that the party against whom the sanctions are sought destroyed evidence with a culpable state of mind. Schwarz v. FedEx Kinko's Office, 2009 WL 3459217, at *7 (SDNY 2009) (citing Fujitsu Ltd., 247

F.3d at 436; <u>Kronish v. U.S.</u>, 150 F.3d 112, 127 (2d Cir. 2001)).  Courts have recognized that this intent to destroy can be established with intentional action or bad faith, as well as through negligence.  <u>Id.</u>

Here, the loss of the evidence was, at the very least, negligent.  While Ms. Durr may have made the effort to record the video onto a DVD, she had never made such a recording before, and did so with little to no training or instruction.  Pls.' PFF ¶ 47.   Additionally, she only viewed a few seconds of the DVD, and thus did not know if a substantial part of the video actually recorded.  <u>Id.</u> ¶ 52.  Moreover, it is unclear what steps, if any, Risk Management took once it received the DVD that was sent by Ms. Durr.  Given that Ms. Durr had sent Risk Management still photographs, a video showing at least a few seconds of the parking lot on the night in question, and an accident report, it is clear that Risk Management should have taken additional steps to preserve the contents of the videotape.

Because it was sent with an accident report, Risk Management should have viewed the DVD upon its arrival.  By waiting past the 30 day window in which data is stored in the Rapid Eye system, Cumberland Farm's action guaranteed that nothing could ever be done to retrieve the data if the DVD was defective in some way.  <u>Id.</u> ¶ 69.  During discovery, it was not until Colleen Durr's deposition was approaching that counsel for Defendants were finally candid about the whereabouts of the video, stating for the first time in a December 3, 2009 letter that the video had once existed but was unsuccessfully copied.  <u>Id.</u> ¶ 68.

Based upon the foregoing, it is clear that from the time of the incident through much of the discovery process, Defendant failed to take reasonable steps to preserve the evidence in question.

Therefore, the Court finds Cumberland Farms was negligent in its failure to retain and produce the surveillance video and thus the culpability requirement for spoilation is satisfied.

c. Relevance

The third prong that a party seeking sanctions based on alleged spoilation must prove is that the evidence destroyed is relevant to the party's claim.  If a party can establish the destruction of evidence was intentional, that will suffice to show the evidence was relevant and likely in support of the position of the moving party.  If, however, the spoilation was based on negligence, the movant must produce extrinsic evidence to show the evidence would have been favorable to their claim. Gutierrez-Bonilla v. Target Corp., Case. No. CV-08-3985, 2009 U.S. Dist. LEXIS 116958 at *18 (E.D.N.Y. Dec. 16, 2009).  However, "[c]ourts must take care not to 'hold [ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'" Residential Funding Corp., 306 F.3d at 109 (quoting Kronish, 150 F.3d, at 127).

In this case, it is clear that a video showing the time before, during, and after an incident is relevant to determine what actually happened at the moment the injury occurred.  In addition, Plaintiffs have provided extrinsic evidence that tends to prove the destroyed evidence would be favorable to the movant.  They provided testimony from Mr. Essenter, as well as Todd Carl, another patron, as to the poor weather and icy, snowy, and slushy conditions of the Cumberland Farms parking lot at the time the incident occurred.  Essenter Deposition (Dkt. No. 19, Ex. S) at 10:4-6; Carl Deposition at 10:14-15.  Plaintiffs also provided a report from the National Oceanic and

Atmospheric Administration which provided the weather from the day of the incident and the day before the incident, as well as the amount of snow or ice that was on the ground at the time, which remained from previous snowfalls.  Local Climatological Data Report (Dkt. No. 19, Ex. W).

Plaintiffs provided sworn testimony of witnesses with first-hand knowledge of the conditions of the parking area on the day of the incident, as well as a weather report which substantiates that testimony.  This extrinsic evidence tends to show that the destroyed video would have been favorable to Plaintiffs, and was thus relevant to their claim.

### 2. Sanctions

Where a party seeks a sanction such as an adverse inference, the movant must prove (1) that the spoliating party had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) that the party acted with a culpable state of mind upon destroying or losing the evidence; and (3) that the missing evidence is relevant to the movant's claim or defense. Residential Funding Corp., 306 F.3d, at107.  In this case, the Court finds that Plaintiffs have established all three prongs and that, under the circumstances of this case, are entitled to an adverse inference.

The first prong requires Plaintiffs to show that Defendants were under an obligation to preserve the unavailable evidence.  An obligation to preserve evidence arises when a "party has notice that the evidence is relevant to litigation . . . [or] when a party should have known that the evidence may be relevant to future litigation." Byrnie, 243 F.3d at 107.  In this case, Defendants should have known that the video in question might be relevant to future litigation.  After Mrs. Essenter's phone call to Cumberland Farms, in which she informed the Ms. Durr of her husband's

fall and injury, Ms. Durr watched the surveillance video from the night of the fall. Pls.' PFF ¶ 35, .

Ms. Durr observed that the video contained footage from before, during and after Mr. Essenter's

fall; footage that would clearly be relevant to future litigation.  Id. ¶ 39, 40.  In addition, the fact that

Ms. Durr filled out an accident report, printed still photographs from the surveillance video, and

attempted to copy the video onto a DVD, prove that Defendants thought it was important to

preserve information related to Mr. Essenter's fall.  Id. ¶ 39, 40, 45, 46.

"[T]he culpable state of mind factor is satisfied by a showing that the evidence was

destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently."

Residential Funding Corp., 306 F.3d at 108 (internal quotation marks and citations omitted).  In

Residential Funding, the Second Circuit observed that:

> As Magistrate Judge James C. Francis, IV aptly put it, '[The] sanction [of an adverse
> inference] should be available even for the negligent destruction of documents if that is
> necessary to further the remedial purpose of the inference.  It makes little difference to the
> party victimized by the destruction of evidence whether that act was done willfully or
> negligently.  The adverse inference provides the necessary mechanism for restoring the
> evidentiary balance.  The inference is adverse to the destroyer not because of any finding of
> moral culpability, but because the risk that the evidence would have been detrimental rather
> than favorable should fall on the party responsible for its loss.'  Turner v. Hudson Transit
> Lines, Inc., 142 F.R.D. 68, 75 (S.D.N.Y. 1991)).

Residential Funding Corp., 306 F.3d at 108.  Also, in the discovery context, courts have found gross

negligence where data was spoliated because a party failed to take widely-recognized steps to

preserve it, such as failing to issue a written litigation hold or failing to prevent backup tapes from

being erased.  See In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 198-99 (S.D.N.Y. 2007) (collecting

cases); see also Pension Comm. of the University of Montreal Pension Plan v. Banc of America

Securities, LLC, et al., 685 F. Supp. 2d 456, 464 (S.D.N.Y. 2010).

In this case, as discussed earlier, Defendants were negligent because Ms. Durr attempted to

copy the Rapid Eye video onto a DVD despite the fact that she had never done this before, Ms. Durr did so with no real formal training and she only viewed fifteen seconds of the video, and Risk Management did not take proper steps to preserve the DVD when it arrived.  Pls.' PFF ¶ 47, 52.

When a spoliating party is negligent, the innocent party bears the burden of proving the relevance of the lost materials in order to justify the imposition of a severe sanction.  <u>Pension Comm.</u>, 685 F. Supp. 2d at 467-68.  The innocent party may do so by "adduc[ing] sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'"  <u>Residential Funding Corp.</u>, 306 F.3d at 109 (quoting <u>Kronish</u>, 150 F.3d, at 127).  "Courts must take care not to 'hold [ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'"  <u>Residential Funding Corp.</u>, 306 F.3d at 109 (quoting <u>Kronish</u>, 150 F.3d at 127).

In this case, there is no doubt that a video depicting the time before, during, and after an incident is relevant to determine what actually happened at the moment the injury occurred.  Although Defendant's spoliation of the videotape was only negligent, and does not appear to have been intentional or grossly negligent, as the Second Circuit observed in <u>Residential Funding</u>, the inference is adverse to the party responsible for destroying the evidence not because of that party's moral culpability, but instead because of the risk that the evidence would have been detrimental to the party responsible for its loss.  <u>Id.</u>  After considering that Defendant was not forthcoming about the whereabouts of the video until Colleen Durr's deposition was approaching, Pls.' PFF ¶ 68, and

also that Defendant was negligently responsible for its destruction, the Court finds that Plaintiffs are entitled to an adverse inference permitting the jury to infer that the missing videotape was unfavorable to Defendant.  The exact language of this adverse inference will be addressed at trial.


### 3. Summary Judgment

#### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled  to a judgment as a matter of law." FED. R. CIV. P. 56(c); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003).  A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986); Byrnie, 243 F.3d, at 101.

The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding whether the movant has met that burden, the court resolves all ambiguities and draws all permissible factual inferences in the light most favorable to the non-moving party.  See Liberty Lobby, 477 U.S. at 255. If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).  "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its

version of the events is not wholly fanciful." <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998).

"[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." <u>Gallo v. Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment is therefore appropriate "only when no reasonable trier of fact could find in favor of the nonmoving party." <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991).

## B. Discussion

To establish liability under a theory of negligence in a premises liability case, the plaintiff must establish that (1) a dangerous condition existed, (2) that the property owner created the condition or had actual or constructive notice of the condition, (3) that the condition was not cured within a reasonable time after discovery, and (4) that plaintiff's injuries were proximately caused by the condition. <u>Lowrey v. Cumberland Farms, Inc.</u>, 162 A.D.2d 777, 778, 557 N.Y.S.2d 689, 690 (3d Dep't 1990); <u>Torri v. Big V of Kingston, Inc.</u>, 147 A.D.2d 743, 744-45, 537 N.Y.S.2d 629, 630-31 (3d Dep't 1989).

Plaintiffs argue that "[t]he adverse inference, in conjunction with the other evidence in the record, establishes that there is no genuine issue of material fact as it relates to Plaintiffs' negligence claim against Defendant and, as such, summary judgment in favor Plaintiffs on the issue of liability is appropriate." Dkt. No. 18 at 14. The Court begins by noting that the adverse inference approved in this Order does not itself resolve any issues of material fact. The Court holds that Plaintiffs are

13

entitled to an adverse inference permitting the jury to infer that the missing videotape was

unfavorable to Defendant, but a jury must still decide whether to conclude based on this inference

that Defendant was responsible for a dangerous condition that was not cured within a reasonable

period of time and that was the proximate cause of Mr. Essenter's injuries.

In this case, there is a material question of fact regarding whether Defendant had notice of a

dangerous condition.  Plaintiff relies on Mr. DeWaters' testimony to argue that accumulation of

snow and ice at the Cumberland Farms store is commonplace, and therefore Defendant had

constructive notice of these dangerous conditions.  DeWaters Deposition (Dkt. No. 20-21) at 8-11.

However, Defendant attempts to rebut this evidence by relying on the testimony of Todd Carl, who

stated that the parking lot of normally clean of ice and snow, and Colleen Durr, who testified that

Cumberland farms was satisfied with the quality of snow removal.  Carl Deposition at 12; Durr

Deposition (Dkt. No. 20-22) at 54.  The Court concludes that there is conflicting evidence as to

whether Defendant had notice of a dangerous condition, and therefore a material question of fact

exists on this issue as well.  Plaintiffs' Motion for summary judgment is therefore denied.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for Summary Judgment (Dkt. No. 17) is **DENIED**; and

it is further

**ORDERED**, that Plaintiffs' request for an adverse inference under the theory of spoliation

is **GRANTED** (Dkt. No. 18), the exact language of which will be addressed at trial; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:         January 14, 2011
               Albany, New York

_____
            Lawrence E. Kahn
            U.S. District Judge